MARÍA CABALLERO WIDOW OF BESOSA ET AL., Plaintiffs and Appellees, *v.* SAUL KOGAN, Defendant and Appellant.

No. 10544. Argued June 4, 1952.—Decided August 18, 1952.

618

Juan Enrique Géigel, Guillermo Silva and Luis F. Cuyar, for appellant. F. Fernández Cuyar for appellees.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a suit for the specific performance of a contract in which, according to the plaintiffs, the defendant obligated himself to purchase two farms belonging to the plaintiffs. After a trial on the merits, the district court entered a judgment in favor of the plaintiffs from which the defendant has appealed.

The case arose out of a document reading as follows:

## "OPTION OF SALE OF FARMS

"In the city of San Juan, Puerto Rico, on the fourth day of January 1949,

"THERE APPEAR

"AS PARTY OF THE FIRST PART: HARRY M. BESOSA, of age, married to Margaret Nance, Attorney at Law and resident of Hato Rey, Municipality of Río Piedras, who appears in this public instrument representing the *Sucesión* of Harry F. Besosa, composed of María Caballero and her heirs and children Harry M. Besosa, Nydia M. Besosa and Howard M. Besosa.

"AS PARTY OF THE SECOND PART: SAUL KOGAN, of age, married to Aida Huberman, merchant and resident of Santurce of this city.

"The parties state that they have agreed to the execution of a contract of option of sale of farms which they put into effect by this instrument pursuant to the following facts:

"1. Harry M. Besosa states that the *Sucesión* of Harry F. Besosa is the owner in fee simple of two farms situated in Barrio Beatriz, known as Las Cruces, Insular Highway No. 1, in the Municipality of Cayey, which have an approximate area of forty-two cuerdas and eight cuerdas and are adjacent to each other. The following buildings are located on the larger property: Two small frame houses, one with a cardboard roof and the other with a zinc roof, used as dwellings; a third dwelling, with a concrete foundation and a zinc roof; a triple wooden garage, with a zinc roof; a frame house for laborers with a zinc roof; a large shed of zinc and a stable with a zinc roof. These buildings have a water system which obtains water from a spring on the property with an electric pump.

"2. The party of the first part states that from the property of forty-two cuerdas described in the preceding paragraph a parcel of approximately three cuerdas and eighty-seven hundredths was segregated at the northeasterly point of said property which segregation was made by the decedent Harry F. Besosa, who gave this parcel to his son Howard M. Besosa as a gift. The party of the first part explains that no legal document has been heretofore executed for this segregation and there is therefore no record of said segregation in the Registry of Property of Guayama.

"3. The aforesaid larger property is mortgaged to the Federal Land Bank of Baltimore and there is at present a balance

of approximately One Thousand One Hundred Dollars ($1,100), in favor of the latter, and there are also two small houses occupying two small lots of said property which are occupied and owned by two persons without any title and with the mere permission of the decedent. That, furthermore, one of the houses which stands on the extreme east of said property known as Howard's house, is at present under a lease subject to termination and surrender within a period of ninety days after the sale of said property and is occupied by Mr. Harry Keller.

"4. The parties of the first and second part state that the *Sucesión* of Harry F. Besosa, through Harry M. Besosa, their legal representative and party hereto, has agreed with the party of the second part, Saul Kogan, to the sale of both farms with all the buildings and improvements thereon, but after deducting from the larger property the parcel physically segregated and granted to Howard M. Besosa. The parties state that all the terms and conditions of said contract of sale have been agreed to but since the testamentary proceedings in connection with the estate of Harry F. Besosa have not yet been completed, the *Sucesión* is not in a position definitely to execute formally the contract of sale agreed to, and since it is the wish of the party of the second part to take immediate possession of the properties the sale of which has been agreed to, the parties have decided to make at this time this contract of option of sale with the following clauses:

"First: The *Sucesión* of Harry F. Besosa hereby agrees and binds itself to sell to the party of the second part the two farms described in this document with all its buildings and improvements, after deducting therefrom a parcel of 3.87 cuerdas which has been physically segregated from the larger property, and to transfer and convey said properties entirely free of any lien or encumbrance.

"Second: The sale of these properties will be made upon payment of the agreed price of twenty thousand dollars ($20,000) which will be paid in cash at the time of the execution of the deed of sale.

"Third: The party of the second part agrees and binds himself to purchase the properties mentioned in the first clause for the price stipulated in the second clause.

"Fourth: The parties shall proceed to the execution of the deed of sale and to the performance of the respective oblig-

ations which both parties have assumed in this deed within ninety (90) days from this date.

"Fifth: The party of the second part hereby delivers to the party of the first part at the time of the execution of this document, as consideration for the option granted herein, the sum of one thousand dollars ($1,000) in money of legal tender, for which sum the party of the first part gives a receipt to Mr. Kogan. It is understood and agreed that said sum of one thousand dollars ($1,000) will be credited to the party of the second part as part of the purchase price of twenty thousand dollars ($20,000) which he shall pay when the deed of sale is executed, and that, if the party of the second part fails to comply with the obligation contracted by him to purchase the farms for the price and other conditions stated herein, the said amount of one thousand dollars ($1,000) shall be retained by the *Sucesión* of Harry F. Besosa as indemnity for said nonperformance of contract and as compensation for the use of the farm for the period of time between this date and said nonperformance.

"Sixth: The party of the second part will take immediate possession of the properties involved in this option, it being agreed, however, that Mr. Keller, who is now a tenant, may continue occupying the house in which he is living until the date of the execution of the deed of sale and that the rent he pays for the use of said house shall belong from this moment to the party of the second part.

"Seventh: The party of the second part will be obligated to restore possession of the aforesaid properties to the *Sucesión* of Harry F. Besosa if for any reason said party fails to comply with the obligation of purchase contracted by him by means of the execution of this option.

"Eighth: The party of the second part agrees to purchase the aforesaid properties without imposing on the *Sucesión* of Harry F. Besosa any obligation to remove or eject from said farm the two persons mentioned above who occupy two small lots thereon and without imposing on the vendor the duty to compensate the purchaser for the presence on the farm of these squatters.

"In witness of full agreement with all the stipulations of the present contract, the parties of the first and second part

affix their signatures at the foot of this document and subscribe their initials on each and everyone of the pages hereof, all this in the presence of witnesses who sign together with them.

> "SUCESION of HARRY F. BESOSA
> Vendor
> "By: (Sgd.) HARRY M. BESOSA
> "SAUL KOGAN
> Purchaser
> "By: (Sgd.) S. KOGAN

"WITNESS:
(Sgd.) JUAN ENRIQUE GÉIGEL
(Sgd.) FERNANDO CASO"

It is undisputed that Kogan went into immediate possession of the farms, although he later abandoned possession thereof, and that the *Sucesión* was ready, willing and able to transfer title to the farms on or before the expiration of the 90 days but that Kogan refused to accept the same and to pay the remainder of the purchase price.

The defendant assigns several errors, but his principal contention is that the document involved herein was not a perfected contract with a provision for delayed execution, but rather that it was a contract of option which gave the defendant the privilege of buying or not buying the farms as he chose.

There was no reason why the parties could not have entered into a valid contract whereby (1) the defendant would have a unilateral option for a fixed period to buy the farms; (2) the option would be binding on the plaintiffs, but not on the defendant; and (3) the only liability the defendant would incur if he chose not to exercise his option to purchase the farms would be to lose the $1,000 he had paid. *Collazo* v. *Conesa*, 70 P.R.R. 144, 147–49. The defendant contends that the document of January 4, 1949 was such a contract. But the lower court held to the contrary. It decided that the document embodied a perfected contract and that the only thing which was pending was the consumma-

tion and formalization of the contract. These conflicting views require us to examine the document in detail.

Paragraph 4 recites that the *"Sucesión . . .* has agreed with . . . Kogan, to the sale of both farms," that there has been agreement on all the terms and conditions of "said contract of sale", that for the reasons stated the *Sucesión* is not in a position to execute formally "the contract of sale agreed to . . . ," and that Kogan may take immediate possession of the farms "the sale of which has been agreed to . . . ."

In the First clause the *Sucesión* "binds itself to sell" the farms to Kogan. In the Second clause the price, time and manner of payment are fixed. In the Third clause Kogan "binds himself to purchase the properties . . . for the price stipulated in the second clause." In the Fourth clause the parties commit themselves to execute the deed and to comply with their respective obligations within 90 days. In the Fifth clause Kogan delivers $1,000 to the *Sucesión* as part of the purchase price, provided however that if Kogan "fails to comply with the obligation contracted by him" to purchase the farms, the $1,000 shall be retained by the *Sucesión* as indemnity for nonperformance of contract and as compensation for use of the farms.

The Sixth clause provides for immediate possession of the farms by Kogan except that a tenant may continue occupying a house until the deed is executed with the rent therefor going to Kogan. The Seventh clause requires Kogan to restore possession to the *Sucesión* if he fails to comply with "the obligation of purchase contracted by him . . . ." In the Eighth clause Kogan "agrees to purchase" the farms without imposing any obligation on the *Sucesión* to eject the occupants and without imposing on the "vendor" the duty to compensate "the purchaser" for the presence of squatters.

We find no language in the document whereby Kogan expressly reserves the right to choose to buy or not to buy the farms. On the other hand, the document discloses that

Kogan agrees specifically to buy the farms at an agreed price. We think the 90 day provision was not inserted in order for Kogan to decide within that time if he wished to buy the farms. On the contrary, we think the Fourth clause fixes 90 days as the period within which the parties were obligated to execute the deed and to comply with their reciprocal obligations. Execution was postponed, despite agreement on all the terms of the contract, only because the *Sucesión* was not yet in a position to execute the formal deed.

In the clauses just summarized the parties repeatedly used throughout the document the terminology of an obligation on the part of the plaintiffs to sell and on the part of Kogan to purchase the farms. It therefore seems fairly clear that the parties entered into a bilateral contract of sale reciprocally binding on both parties. The defendant nevertheless insists that the document was a unilateral option which enabled him to choose not to purchase the farms.

It is true that in the title of the document and in several places in the text the word "option" is used. But a mistaken label or isolated terminology scattered throughout a contract is not decisive. As in the case of a statute the various terms of a contract are read together and harmonized to determine the true intent of the parties. Cases cited in 12 Am. Jur. 772, footnote 12; 1 Restatement, Contracts, § 235 (c), p. 319. Reading the document as a whole, we find it difficult to escape the conclusion that the contract was bilateral.

■ The defendant finds some significance in the fact that in the Fifth clause Kogan delivers $1,000 "as consideration for the option ... ." He argues that if purchase had been effected by the documents, the $1,000 would have been part of the purchase price and not consideration for the option. If this provision stood alone or if the other clauses were in harmony with it, there would be some force to this argument. But in the very same clause the parties clearly expressed their intention to create an obligation to purchase

on the part of Kogan rather than to give him a unilateral option. In the Fifth clause the parties agreed that if Kogan "fails to comply with the *obligation contracted by him* to purchase the farms for the price and other conditions stated herein," then the *Sucesión* could retain the $1,000 delivered by Kogan as damages *for said nonperformance of contract* and for the use of the farms. We hereinafter point out that this is a mere penal clause. But for present purpose it is important to note that even the Fifth clause specifically indicates that Kogan assumed the obligation to purchase the farms—a contract which is quite different from an option to purchase.

The defendant also argues that the provision in the Fifth clause for retention of the $1,000 for use of the farms demonstrates that the purchase had not been effected and that it is compatible only with the theory of an option. But the provision for retention of the $1,000 also recites that it is for *nonperformance of contract*. And in any event, the Fifth clause as a whole, as already noted, points to a contract of purchase rather than an option.

■ The defendant contends that the provision in the Seventh clause for restoration of the properties to the *Sucesión* is meaningless unless the theory of an option prevails. But this clause provides for restoration of the farms if Kogan "fails to comply with the *obligation of purchase* contracted by him ...". This is an express statement that Kogan assumed an obligation to purchase the farms. It negatives the concept that Kogan had only an option to purchase. Moreover, the Seventh clause is closely related to the Sixth clause. The latter provides that Kogan would take immediate possession and that a certain tenant would continue his occupancy only "until the date of the execution of the deed of sale", and that the tenant would pay rent to Kogan "from this moment." It is difficult to believe that under a mere option the parties would have provided that

Kogan would go into possession of the farms and would exercise such acts of ownership as collecting and keeping the rent for part thereof.

■■ The defendant also relies on the fact that in their original complaint the plaintiffs characterized the document of January 4, 1949 as an option which the plaintiffs alleged the defendant exercised on March 3, 1949 by agreeing to the purchase of the farms with a modification of the terms of payment whereby the defendant would pay $13,000 at once and execute a mortgage for $6,000. However, in the amended complaint the plaintiffs took the position that the original document was a perfected contract. We recognize that the interpretation placed upon a contract by the parties themselves subsequent to its execution is usually important in determining the meaning of disputed terms of the contract. Cases cited in 12 Am. Jur. 787–88, footnotes 3 and 4; 1 Restatement, Contracts, § 235(e), p. 319. But here the terms of the document itself so clearly point to a bilateral contract rather than a unilateral option that we cannot hold that this action of the plaintiffs is sufficient to override the terms of the contract itself.

■ In view of our conclusion that the document herein was a contract of sale, § 1340 of the Civil Code, 1930 ed., is applicable to this case.[1] The argument of the defendant to the contrary must be rejected because it is predicated on the false premise that the defendant merely obtained an option and did not obligate himself to purchase.

*Alvarez* v. *Manzano*, 66 P.R.R. 344, is in point. That case involved a contract in which the defendants had agreed to sell, and the plaintiff to buy, certain inheritance rights. A private document was signed in which it was provided that

---

[1] Section 1340 reads as follows: "A promise to sell or buy, there being an agreement as to the thing and price, gives a right to the contracting parties to mutually demand the fulfillment of the contract.

"Whenever the promise to purchase and sell can not be fulfilled, the provisions of this Book relating to obligations and contracts, shall be observed by the vendor and by the vendee, as the case may be."

the formal deed would be executed on a future date as it was necessary previously to determine the amount of certain debts. We affirmed a judgment granting specific performance of the contract. We said at p. 351: "The contract was perfected ... when both parties, vendors and purchaser, reached an agreement as to the price and the thing to be sold. What the parties postponed to be executed ... was the consummation of the contract, and since the consummation was not carried out then, plaintiff has now demanded it by way of this action for performance of contract." Here likewise reciprocal obligations—one to purchase, the other to sell—were assumed by the parties, with the reason stated in the contract for the delay in execution of the deed. To the same effect, *Collazo* v. *Conesa, supra; Becerra* v. *Cobián,* 69 P.R.R. 572, 576; *Carlo* v. *Vargas,* 66 P.R.R. 387, 391; *Jacinto* v. *Carpenter,* 46 Philippine Reports 893 (1923); *Borromeo* v. *Franco et al.,* 5 Philippine Reports 49 (1905).

The document signed by the parties on January 4, 1949 was a perfected contract of purchase and sale in which the formality of executing a deed was postponed for 90 days. As we have seen, Kogan refused to accept the transfer of title to the farms which the *Sucesión* was ready, willing and able to make on March 7, 1949. The plaintiffs were therefore entitled to demand specific performance of the contract. Sections 1334, 1339, 1210 and 1231 of the Civil Code; *Alvarez* v. *Manzano, supra; Varcárcel* v. *Sancho, Treas.,* 61 P.R.R. 207, 210–11; *West India Oil Co. (P. R.)* v. *Treasurer,* 54 P.R.R. 695, 704.

■■ The defendant next contends that the lower court erred in holding that the Fifth clause of the contract was in effect a penal clause, which is governed by §§ 1106–07 of the Civil Code.[2] Here again it is important to note that

---

[2] "Section 1106.—In obligations with a penal clause the penalty shall substitute indemnity for damages and the payment of interest in case of nonfullfilments, should there be no agreement to the contrary.

"This penalty can only be enforced when it is demandable in accordance with the provisions of this Code."

the Fifth clause on its face reflects a binding contract on the part of Kogan to purchase rather than an option which he could exercise or not as he chose. Such language as "the obligation contracted by him to purchase", and losing $1,000 as damages "for said nonperformance of contract" is inconsistent with the theory of a mere option. That is to say, if a true option existed, there could not be nonperformance of the contract as such because the failure to exercise an option does not constitute nonperformance of a contract. It follows that the parties did not contemplate that the indemnity of $1,000 was conditioned on the existence of an option plus failure to exercise it. On the contrary, Kogan was obligated to purchase; and in the Fifth clause he agreed that the *Sucesión* was entitled to retain the $1,000 as indemnity if he failed to perform his contract to purchase. The lower court was therefore correct in holding under these circumstances that the clause in question was a typical penalty clause for failure to comply with the contract of purchase and sale. And under § 1107 the presence of the penalty clause does not preclude insistence by the aggrieved party on the performance of the contract, unless the contract expressly reserves to the other party an election between performance of the contract and payment of the penalty. Since the contract in the instant case contains no such express reservation, the plaintiffs were entitled to performance of the contract. *Carlo* v. *Vargas*, *supra*, p. 392 and authorities cited; Annotations, 32 A.L.R. 584, 98 A.L.R. 887.

 Finally, the defendant argues that even assuming the document of January 4, 1949 was not an option but a contract of purchase, the judgment granting specific performance of the contract violated § 1343 of the Civil Code

---

"Section 1107.—The debtor can not exempt himself from the fulfillment of the obligation by paying the penalty, unless such right has been expressly reserved to him. Neither may the creditor exact the fulfillment of the obligation and also the payment of the penalty, unless such right has been clearly granted him."

which provides that "When earnest money or a pledge has been given in the contract of purchase and sale, the contract may be rescinded, if the vendee should agree to forfeit the money or the vendor to return double the amount."

The defendant concedes that there is no provision in the contract which characterizes expressly as earnest money the sum of $1,000 delivered by the defendant to the plaintiffs. He contends, however, that "in interpreting the contract as one of sale, the said sum of $1,000 must necessarily be considered as earnest money, in view of the stipulations contained in the Fifth and Seventh clauses of the contract." He therefore asserts that under § 1343 he may rescind the contract of sale by agreeing to forfeit the $1,000, and that he has always been agreeable to the retention of the $1,000 by the plaintiffs.

The difficulty is that the Fifth clause specifically provides that the $1,000 was part of the purchase price and not earnest money. In the absence of an express provision that the sum delivered is earnest money, § 1343 is inapplicable. 10 Manresa 84 (4th ed., 1931) ; 23 Scaevola 364 (1906 ed.).

The judgment of the district court requiring the defendant, upon execution of the corresponding deeds by the plaintiffs, to pay to the latter (1) the agreed price of $20,000, less the sum of $1,000 already paid as part of the said price, (2) costs and (3) attorney's fees of $500, is affirmed.

Mr. Chief Justice Todd, Jr., was not present when the judgment was signed, but he took part in the consideration of the case and concurs in the opinion.

Mr. Justice Negrón Fernández, dissenting.

I dissent. The least that can be said of the contract subscribed by the parties is that it is ambiguous. It is true that in it, reference is made to "the contract of sale agreed to," using such phrases as "agrees and binds itself to sell" (referring to the *Sucesión*) ; "agrees and binds himself to

purchase" (referring to Kogan) and "the parties shall proceed to the execution of the deed of sale and to the performance of the respective obligations which both parties have assumed in this deed," all of which in the opinion of the Court establishes that the contract of sale was perfected, and that its execution was delayed for the term of 90 days, according to the conditions of the contract. But it is also true that not only in its title, but also in the clauses in which the conditions of the contract are set forth, more than once, reference is made to "*a contract of option of sale*"; "the obligation of purchase contracted by him [Kogan] by means of the execution of *this option*"; "the properties involved in *this option*"; "The party of the second part [Kogan] hereby delivers to the party of the first part at the time of the execution of this document, *as consideration for the option granted herein*, the sum of one thousand dollars ($1,000)..." (Italics ours.)

In the fifth clause, where the foregoing is set forth, it is stated that "if the party of the second part fails to comply with the obligation contracted by him to purchase the farms for the price and other conditions stated herein, the said amount of one thousand dollars ($1,000) *shall be retained* by the *Sucesión* . . . as indemnity for said nonperformance . . . ," and the seventh clause contains that the obligation of Kogan "to restore possession of the aforesaid properties to the *Sucesión* . . . if for any reason said party fails to comply with the obligation of purchase contracted by him *by means of the execution of this option*." (Italics ours.) In the clauses on appearance, the parties "state that they have agreed to the execution of a contract of *option of sale* of farms which they put into effect by this instrument" and further on they set forth that "the parties have decided to make at this time this contract of *option of sale* with the following clauses." (Italics ours.)

I consider that the contract in question is one that grants Kogan an option for the sale of the property described therein, under the conditions stipulated in said contract— one of which was that the *Sucesión* would retain the amount of $1,000 delivered by Kogan if he did not buy within the following 90 days—since all the conditions that flow from the aforesaid instrument and which the Court examined in its opinion to reach the conclusion that it is a perfected contract with a provision for delayed execution, are compatible with the theory of the option, while the clauses related to the option are not compatible with the theory of the perfected contract with a provision for delayed execution. This is clearly illustrated by the obligation imposed on Kogan of restoring possession of the property of the *Sucesión* "if for any reason said party fails to comply with the obligation of purchase contracted by him by means of the execution of this option." It is inconceivable that if the intention of the parties was actually to perfect a contract with a provision for delayed execution, they would have to agree on the delivery of the possession by Kogan to the vendor if Kogan did not purchase.

The term "option of sale" used in the instrument herein has a definite juridical meaning and its repeated use in the contract can not be ignored in determining what was the intention of the parties as to the agreement, especially when it was drafted by persons conversant with law. One of the members of the *Sucesión* (and legal representative thereof) as well as one of the witnesses in said instrument are prominent members of the bar.

Although I agree with the observation of the Court that if the intention was to grant an option, the instrument should have been drafted in plainer terms, all the more reason to make the observation that if the intention of the parties was to perfect a contract with a provision for delayed execution, there was no need to refer constantly to the option and in-

clude in said contract conditions which are incompatible with the theory of a contract of sale with a provision for delayed execution.

As I said at the beginning, the least that can be said of the contract herein is that it is ambiguous and under these circumstances I believe that the rule *Ambiguum pactum contra venditorem interpretandum est* is in point. I do not consider in point the case law cited in the opinion of the Court, simply because in my opinion it has no bearing on the text of the contract involved herein.

Consequently, I am of the opinion that the judgment appealed from should be reversed and the complaint dismissed.